CHICAGO TITLE & TRUST COMPANY, Trustee, and another, Respondents, vs. BASHFORD and others, imp., Appellants.

*December 15, 1903—January 12, 1904.*

*Constitutional law: Foreign corporations: Right to exercise franchises: Citizenship: Interstate comity: Construction of statutes: Vested rights: Failure to comply with statute: Transacting business: Transfer of title by operation of law: Commencement of action: Judgment creditors: Right of possession.*

1. While a corporation is not a citizen either of any state or of the United States within the provision of sec. 2, art. IV., Const. U. S., or the XIVth amendment thereto, protecting such citizens against the denial of certain rights by any state, and has no right, by constitutional provision or otherwise, to exercise its corporate franchises in other than its parent jurisdiction, it is the policy of this state to accord to foreign corporations, by comity, full and complete privilege to exercise their corporate franchises within the state, except so far as limitation is imposed by express legislation.

2. Sec. 1770*b*, Stats. 1898 (providing that while in default in the performance of certain requirements, foreign corporations shall not transact business or acquire, hold, or dispose of property in this state, and that every contract made by or in behalf of such a corporation, while so in default, affecting its personal liability, or relating to property within this state, shall be wholly void on its behalf, but shall be enforceable against it), is prospective only, and does not divest corporations which fail to comply with its terms of title to or lien on property which they, by permission of the state, had acquired prior to its enactment.

3. Neither the mere passive continuance, by a foreign corporation, to hold a valid lien on or title to property in this state, acquired prior to the enactment of sec. 1770*b*, Stats. 1898, nor the commencement and prosecution of an action to foreclose such a lien, is "transacting business" within the meaning of that section and neither is prohibited thereby.

4. Neither creditors of a mortgagor, who have subsequently obtained a judgment lien against the mortgaged property, nor purchasers at an execution sale to enforce such a lien, have any present right to the possession of such property, and they are in no position, in an action by the mortgagee, a foreign corporation, to foreclose its lien, to raise objection that because the

corporation had -failed to comply with sec. 1770*b*, Stats. 1898,. it could not lawfully transact business in this state, and there- fore had no right to take possession of the property under its mortgage giving such right.

5. The mere transfer of the title to property in this state from one foreign corporation to another, resulting by operation of law from the consolidation of two foreign corporations, is not ren- dered void by failure of the corporation to comply with sec. 1770*b*, Stats. 1898, although such consolidation took place after the statute went into effect.

APPEAL from an order of the circuit court for Marquette county : E. RAY STEVENS, Circuit Judge.  *Affirmed.*

By the complaint it appears that in 1888 and 1894 the defendant Ne-pee-nauk Club, an Illinois corporation, exe- cuted two trust deeds on lands in Green Lake and Marquette counties to the Title, Guaranty & Trust Company, also an Illinois corporation, in Illinois, to secure certain bonds, of which $8,700 were issued and by assignment had come to be owned at time of suit, $7,200 by plaintiff *Conley,* and the balance by three other individuals joined as defendants; that those trust deeds were in substantially the customary form to secure such indebtedness, and empowered the trustees to take steps by foreclosure, etc., in case of default, also to enter and take possession and receive rents and profits; that on September 10, 1901, the Title, Guaranty & Trust Company and another corporation (the Chicago Title & Trust Co.) were duly consolidated, pursuant to the law of Illinois, under the name of *"Chicago Title & Trust Company,"* whereby the consolidated company, · the plaintiff, succeeded to all the rights, powers, privileges, and properties of the trustee named in. said trust deeds.  There was allegation of default and exercise of election to declare the whole principal due, and that after such default the plaintiff company, as trustee, had entered and taken possession of the premises and was at the time of the commencement of the suit in possession.  The prayer was for foreclosure and sale, and for personal judg-

ment against the defendant Ne-pee-nauk Club for deficiency.

Defendants *Bashford, O'Connor,* and *Aylward* interposed an answer admitting substantially all the material allegations of the complaint, but alleging that they, on the 28th of October, 1902, by attachment followed by judgment on December 22, 1902, acquired a lien upon the lands of the Ne-pee-nauk Club, described in the complaint, which they allege is prior and superior to the lien of the trust deeds, but do not allege in the defensive part of the answer that either the plaintiff trust company or the defendant club have failed to comply with sec. 1770*b,* Stats. 1898, requiring the filing with the secretary of state of Wisconsin of their articles of incorporation, etc.; but, admitting the due and legal consolidation of the Title, Guaranty & Trust Company and the Chicago Title & Trust Co. in September, 1901, and succession of the consolidated company to all the rights of its predecessors, they deny that the plaintiff trust company, as trustee or otherwise, succeeded to any title, right, or interest in the real estate described in the complaint. As a counterclaim, however, they set up substantially the same facts with reference to acquisition of judgments, and that neither the Ne-pee-nauk Club of Chicago, nor the plaintiff trust company, has in any wise complied with such section of the Wisconsin statutes, and they are therefore not entitled to do business or hold property in the state of Wisconsin, and that the plaintiff trust company has acquired no right or interest in any of the lands described, and pray that the lien of their judgments may be declared prior to the trust deeds described in the complaint, and that said deeds be set aside and held for naught.

Plaintiffs demurred to the answer as not stating facts sufficient to constitute a defense, and to the counterclaim for insufficiency of facts, and because the cause of action therein stated is not pleadable as a counterclaim to the action.

The demurrer was sustained by order of the circuit court, from which the said answering defendants bring this appeal.

For the appellants there was a brief by *Bashford, Aylward & Spensley,* and oral argument by *R. M. Bashford.*

*W. S. Stroud,* for the respondents.

DODGE, J.   In order to correctly construe secs. 1770*a*–1770*e,* Stats. 1898, as amended by ch. 399, Laws of 1901, placing burdens upon the exercise by foreign corporations of their corporate franchises in this state, we must proceed in the light of two well-established fundamental doctrines or principles: First, that neither by constitutional provision nor otherwise has a foreign corporation the right to exercise such franchises in other than its parent jurisdiction, and that it is not a citizen either of any state or of the United States, within the provision of either sec. 2, art. IV, of the Constitution of the United States, or sec. 1 of the XIVth amendment to that constitution, protecting such citizens against the denial of certain rights by any state.   *Paul v. Virginia,* 8 Wall. 168; *Waters-Pierce O. Co. v. Texas,* 177 U. S. 28, 20 Sup. Ct. 518; *Ashland L. Co. v. Detroit S. Co.* 114 Wis. 66, 78, 89 N. W. 904.   Secondly, however, that it is the policy of this state, settled from its earliest existence, to accord to foreign corporations, by comity, full and complete privilege to exercise their corporate franchises within this state except so far as limitation is imposed by express legislation.   *Charter Oak L. Ins. Co. v. Sawyer,* 44 Wis. 387; *Wyman v. Kimberly-Clark Co.* 93 Wis. 554, 559, 67 N. W. 932.

The first general scheme of regulation and restraint of all foreign corporations was sec. 1770*b,* Stats. 1898, denouncing certain disabilities upon them while in default in performance of certain trifling requirements, quite analogous to those imposed on domestic corporations.   The only provisions of that section which can be deemed in any wise effective to support these defendants in their resistance to the attempt of the plaintiff corporation to maintain the present suit are these: That while in default it shall not "transact business

or acquire, hold, or dispose of property in this state," and
that every contract made by it, or on its behalf, affecting its
personal liability, or relating to property within this state,
shall be wholly void on its behalf, but shall be enforceable
against it.

We can feel no doubt that the legislation of 1897 [1] was
prospective only. That is the presumptive purpose in all
enactments, except some merely remedial statutes, unless the
contrary clearly appears. *State v. Atwood,* 11 Wis. 422;
*Seamans v. Carter,* 15 Wis. 548; *Finney v. Ackerman,* 21
Wis. 268; *Vanderpool v. L. C. & M. R. Co.* 44 Wis. 652, 663;
*Jochem v. Dutcher,* 104 Wis. 611, 614, 80 N. W. 949.
Especially strong is that presumption in the present case,
when the avoiding of an existing contract or the divesting of
a vested right of property would be so clearly obnoxious to
the constitutional prohibition against the impairment of the
obligation of contracts (sec. 12, art. I, Const. Wis.; sec. 10,
art. I, Const. U. S.), and against the deprivation of any
person of property without due process of law (art. XIV,
Amendment Const. U. S.). What, then, of the plaintiff cor-
poration's conduct since 1898 comes within these statutory
provisions? Very plainly, the plaintiff is not now transact-
ing any business in this state, by passively continuing to
hold a previously existing and valid lien or title. Such
passivity is the negation of transaction of business. Neither
is the mere commencement and prosecution of this suit trans-
acting business in the forbidden sense. *Charter Oak L. Ins.
Co. v. Sawyer, supra.* See, also, collection of authorities in
note to *Cone E. & C. Co. v. Poole,* 41 S. C. 70, 24 L. R. A.
289. Those, however, are the only acts suggested as pos-
sible violations of this prohibition of the statute, except, per-
haps, the taking possession of the mortgaged land, of which,

---

[1] The provisions of sec. 1770b herein considered were first enacted
in 1897 as part of the Statutes of 1898, and, under sec. 4978, did not
go into effect until September 1, 1898.—REP.

however, appellants have no interest to complain, for they, as judgment creditors, or even as purchasers at execution sale, have no present right to possession.

It seems equally plain that no contract relied on as support of plaintiffs' cause of action is obnoxious to this statute, construed as prospective. The only contracts relied on were the bonds and trust deeds, all made long prior to the legislation, and entirely valid when made. Such existing valid contracts were not avoided by the statute. In this connection, however, it is suggested that, while the original trust deeds may have been valid, the right of the plaintiffs thereunder arises by virtue of a contract of assignment made in 1901, after the enactment of sec. 1770*b*, Stats. 1898. The making of any such contract is, however, negatived by the allegations of the complaint, admitted by the answer, that the present plaintiff is the mere successor, under the law of Illinois, of all rights of the original trustee; such succession resulting by force of law from the consolidation of two Illinois corporations. For the purposes of this question, no contract of assignment intervenes any more than if the corporate name of the original trustee had been legally changed, or new stockholders admitted. This conclusion that no contract upon which this action is based is void renders immaterial the extended argument of appellants that a foreign corporation cannot maintain a suit in our courts upon a contract rendered void by such a statute as sec. 1770*b*. That argument goes no further than our own decision in *Ashland L. Co. v. Detroit S. Co.* 114 Wis. 66, 89 N. W. 904.

So there remains of the acts prohibited by sec. 1770*b* only the holding of property in this state, if, indeed, the trustee holds property, instead of a mere lien thereon, having *situs*, not in Wisconsin, but at the domicile of the holder. *State ex rel. Dwinnell v. Gaylord*, 73 Wis. 316, 41 N. W. 521. From what has been said already, our conclusion must be obvious that the statute was not intended to apply to the acquisition of

any property prior to its enactment, nor to the holding of any so acquired, so long as the prohibition against transacting business in this state be not breached. That one, even a foreign corporation, owning property the day before the enactment of sec. 1770b, ceased to own or hold it upon the enactment of that statute, is a result which no legislature had any right to intend, nor have courts any right to impute such an intent. The absurdity of such a construction is emphasized by the accompanying prohibition against disposing of any such property. If the legislature intended to forbid the holding of previously acquired property, they equally forbade its disposal. Hence no foreign corporation owning property in this state when sec. 1770b took effect could escape criminality save upon the theory that the statute, *ex proprio vigore,* confiscated the property, so that its former owner had ceased to be such without having disposed of it. Clearly such confiscation would be obnoxious to the fourteenth amendment to the federal constitution, forbidding any state to deprive any person of property without due process of law. The only reasonable construction of this portion of the statute is that the prohibitions against holding or disposing of property must be taken as associated with that against acquiring any, so that they apply only to property attempted to be acquired after the statute, and therefore in its defiance. The question how far full enjoyment of previously acquired property so continued to be held by a foreign corporation may be affected by restraint on the doing of business or the making of contracts does not arise in the present case, since none of those prohibited acts appear to have been attempted by plaintiffs. The consideration of that question may properly wait till it arises.

We now hold that the valid title or lien which this corporate plaintiff, by permission of the state, acquired, is not divested or impaired by the subsequent legislation; that the mere bringing of this suit is not a prohibited transacting of

business; hence, as conclusion, that the answer sets up neither any defense to this action, nor any invalidity of plaintiffs' lien to warrant its cancellation, or the clearing of title in appellants' favor. Having reached this conclusion, it becomes unnecessary to consider the further question, somewhat debated, whether *Conley,* a bondholder, might not maintain this action if the trust company were incapacitated to sue, or had been divested of the lien held by it merely in trust for the bondholders.

*By the Court.*—Order sustaining demurrer is affirmed.

SIEBECKER, J., took no part.