## JOSEPH TRINER CORPORATION v. ARUNDEL et al.

## FRANK McCORMICK, Inc., v. SAME.

### Nos. 2836, 2839.

District Court, D. Minnesota, Fourth Division.

June 29, 1935.

Bradford, Cummins & Cummins, of St. Paul, Minn., for Joseph Triner Corporation.

Thomas Gallagher, of Minneapolis, Minn., for Frank McCormick, Inc.

Harry H. Peterson, Atty. Gen., Frederic A. Pike, Deputy Atty. Gen., and Roy C. Frank, Asst. Atty. Gen., for the defendants.

Before SANBORN, Circuit Judge, and NORDBYE and JOYCE, District Judges.

SANBORN, Circuit Judge.

Since the suits were brought to enjoin the enforcement of a state statute, the hearing was before a court consisting of three judges, as required by law.

The facts are not in dispute, and we find them to be, in substance, as follows:

Joseph Triner Corporation is and has been a corporation organized under the laws of Illinois. Its business is that of manufacturing and rectifying alcoholic liquors in its manufacturing plant at Chicago, Ill. It has complied with the statutes of the state of Minnesota relative to foreign corporations doing business

within that state, and it owns and operates therein its business as a wholesaler of intoxicating liquors to retailers within the state of Minnesota. On February 19, 1934, it was licensed by the defendant David R. Arundel, as Liquor Control Commissioner of the state of Minnesota, to sell its liquors · at wholesale in said state. Pursuant to its license, it registered forty brands of liquor with said defendant, and since that time has been engaged in the sale of such brands in Minnesota. It has built up an extensive trade in the various brands so listed. Its gross sales have approximated $90,000, and it has realized a profit of about $1,200 per month. It has spent approximately $10,-000 in advertising its products and in establishing a demand therefor. All of the liquors manufactured by it in Illinois and sold by it in Minnesota have contained more than 25 per cent. of alcohol by volume, and were finished products when imported into the state of Minnesota. In addition to complying with the laws of Minnesota with respect to the sale of intoxicating liquors in that state, as such laws existed prior to April 30, 1935, the Joseph Triner Corporation complied with the laws of the United States relative to the manufacture and sale of such liquors. The Legislature of Minnesota enacted chapter 390, Laws of 1935, entitled, "An Act to regulate the Importation of Intoxicating Liquor Containing More Than 25 Per Cent of Alcohol by Volume." Section 1 of that act provides: "No licensed manufacturer or wholesaler shall import any brand or brands of intoxicating liquors containing more than 25 per cent of alcohol by volume ready for sale without further processing unless such brand or brands shall be duly registered in the patent office of the United States."

This act became effective April 30, 1935. The brands of the Joseph Triner Corporation were not registered in the Patent Office. After chapter 390 became effective, the defendant Arundel served notice upon the Joseph Triner Corporation that it could no longer import any of its brands of liquor into the state of Minnesota unless and until said brands were registered in the United States Patent Office. A number of months will have elapsed before such brands can be registered. Some of them are of such a nature as not to be subject to registration.

Frank McCormick, Inc., is a Minnesota corporation, the holder of a manufacturer's license issued to it by the defendant Arundel on January 20, 1935. It is engaged solely as a wholesaler of intoxicating liquors to retail dealers within the state of Minnesota. It has established a valuable business in which it has invested a large sum of money. It has imported large quantities of intoxicating liquor containing more than 25 per cent. of alcohol by volume, and bearing brand names which are not registered in the United States Patent Office, and which liquor, if chapter 390 is valid, can no longer be imported into the state. Prior to the effective date of chapter 390, Frank McCormick, Inc., contracted with foreign manufacturers for the purchase of liquors, the importation of which is now prohibited by that act.

The contentions of the plaintiffs are that chapter 390 violates the commerce clause (section 8 of article 1) and the equal protection clause (section 1 of Amendment article XIV) of the Constitution of the United States.

The contention of the defendants is that chapter 390 represents a proper exercise of its police power by the state and is in no respect violative of the Constitution of the United States. They also contend that, since the adoption of the Twenty-first Amendment to the Constitution of the United States, neither the commerce clause nor the equal protection clause applies to intoxicating liquor, and that the power to control the manufacture, importation, and use of such liquor was, without any restrictions, conferred upon the states by virtue of the provision of the Twenty-first Amendment, that "the transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

With the contention that by this language it was intended that intoxicating liquors should be excepted from the provisions of the commerce clause and other provisions of the Constitution of the United States, we are unable to agree. The purpose of the provision referred to was to make it impossible for Congress to permit the transportation or importation into any state, territory, or possession of the United States of intoxicating liquors in violation of the laws of the

state, territory, or possession. In other words, the provision left the states, territories, and possessions free to determine to what extent, if at all, intoxicating liquor should be a lawful subject of commerce within their limits.

While the plaintiffs contend that chapter 390 places an unreasonable burden upon interstate comerce, and that it unreasonably discriminates not only between the manufacturers of liquor within the state and manufacturers and importers of liquor without the state, but also between manufacturers and importers without the state whose brands are registered in the Patent Office and similar manufacturers and importers whose brands are not registered, without any respect whatever to the kind or quality of the liquor which is manufactured and imported into the state, and without any regard as to whether such brands are or are not subject to registration; and that the registration of brands has no proper relation to the regulation of the liquor traffic within the state of Minnesota, we think it is only necessary to consider one question, and that is whether chapter 390 denies to the plaintiffs the equal protection of the laws.

The equal protection clause extends to foreign corporations within the jurisdiction of the state and' safeguards to them protection of laws applied equally to all in the same situation. The plaintiff Joseph Triner Corporation is entitled in Minnesota to the same protection of equal laws that natural persons within its jurisdiction have a right to demand under like circumstances. Kentucky Finance Corp. v. Paramount Exch., 262 U. S. 544, 550, 43 S. Ct. 636, 67 L. Ed. 1112; Quaker City Cab Co. v. Commonwealth of Pennsylvania, 277 U. S. 389, 400, 48 S. Ct. 553, 72 L. Ed. 927. The equal protection clause does not prevent the state from adjusting its legislation to differences in situation, or forbid classification in that connection, "but, it does require that the classification be not arbitrary, but based on a real and substantial difference, having a reasonable relation to the subject of the particular legislation." Power Mfg. Co. v. Saunders, 274 U. S. 490, 493, 47 S. Ct. 678, 679, 71 L. Ed. 1165; Quaker City Cab Co. v. Commonwealth of Pennsylvania, supra, page 400, 277 U. S. 389, 48 S. Ct. 553, 72 L. Ed. 927.

That the act here in question discriminates between the manufacturers of liquor located within the state of Minnesota and those located without the state, but who are permitted to import liquor into the state, cannot be doubted. The Minnesota manufacturer may sell his liquor whether his brands are registered in the Patent Office or not. The manufacturer or importer without the state who imports his liquor into the state in a finished condition can only sell it provided that he has registered his brands in the Patent Office. Unless this discrimination is justified because of some real and substantial difference having a reasonable relation to the subject of the particular legislation, it is clear that the act cannot be sustained.

Counsel for the defendants suggest that chapter 390 was enacted for the purpose of protecting the public from spurious brands of intoxicating liquor manufactured outside the limits of the state, recognizing that the manufacturing and processing of liquor within the state can be more easily supervised by local officials than the manufacturing and processing of liquor without the state, and that, while the registration of the brand name has no relation to quality or purity of the product, its registration fixes the ownership of the brand and the responsibility for the products sold thereunder.

We are unable to see any justification for making a distinction between those who are permitted to manufacture or process liquor within the state and those who are permitted to import liquor into the state, with respect to the use of registered or unregistered brands. If the registration of brands of liquor in the Patent Office has, as is contended, some tendency to protect the public from misbranded liquor or to place responsibility for liquor sold within the state, there seems to be no logical reason for making the law apply only to those who import the finished product. Under chapter 390, the Minnesota manufacturer, processor, or rectifier can sell his liquor to the public under an unregistered brand, whereas the Joseph Triner Corporation and all others similarly situated are prohibited from selling liquor similar in all respects, unless their brands are registered in the Patent Office.

We have reached the conclusion that chapter 390 denies to the plaintiffs the equal protection of the laws, and is therefore unconstitutional.

It is ordered that interlocutory injunctions issue as prayed for. A bond will be furnished by each plaintiff in the usual form, in the sum of $2500.