### BERGER v. KINGSPORT PRESS, Inc.

### KINGSPORT PRESS, Inc., v. BERGER.

#### Nos. 7144, 7145.

Circuit Court of Appeals, Sixth Circuit.
April 13, 1937.

J. H. Epps, Jr., of Johnson City, Tenn. (Berger & Spinoza, of Boston, Mass., and Cox, Taylor & Epps, of Johnson City, Tenn., on the brief), for Berger.

Fred Parvin, of Greeneville, Tenn. (Chas. T. Herndon, Jr., of Kingsport, Tenn., and Susong & Parvin, of Greeneville, Tenn., on the brief), for Kingsport Press.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The controversy relates to priorities asserted by the cross-appellant as a creditor of the bankrupt. It claims priority against assets of the bankrupt in its possession by virtue of a manufacturer's lien, and priority against all assets of the bankrupt located in Tennessee over other corporate creditors not resident or domesticated in the state.

The bankrupt is Merchandisers, Inc., a Massachusetts corporation, and the claimant is Kingsport Press, Inc., a Delaware corporation, qualified under the laws of Tennessee to do business therein and having its principal place of business at Kingsport, Tenn. The bankrupt was adjudicated in the District Court of Massachusetts, and the appellant appointed receiver for its estate. Later the appellant was appointed ancillary receiver in the Eastern District of Tennessee, and subsequently elected trustee in the parent jurisdiction. There is no dispute as to the amount of the claim, the challenge being to its status.

The bankrupt had contracted with the claimant for the printing of several hundred thousand copies of its work, "The International Cook Book." The paper and plates for the printing, and the dies for embossing the cover, were furnished by the bankrupt. The cartons were purchased, printed, and filled by the claimant. At the time of adjudication a large quantity of printed books inclosed in cartons, a quantity of unfilled cartons, and a supply of unused paper, were in the claimant's possession at Kingsport, Tenn. It filed its claim in the ancillary proceedings in the sum of $19,377.22. The claim was allowed by the referee, who found the claimant entitled to a common-law lien upon all articles in its possession manufactured by it for the bankrupt, entitled to priority of payment over foreign corporate creditors out of assets located in Tennessee, but without any lien upon the plates and dies furnished to it by the bankrupt. Upon exceptions to the referee's report the District Judge entered a decree, which in all respects affirmed his findings and conclusions, except that it adjudged the claimant to be without common law or statutory lien against the property in its possession. From this decree both litigants have appealed, the trustee on the ground that the claimant is a general creditor without priority, and the claimant from that part of the decree which denies its lien.

The contract arose out of correspondence beginning with an inquiry by the bankrupt, the furnishing of an estimate by the claimant, and a final order for the printing. The estimate for paper, printing, and binding, giving price and terms, contained the following: "The above quotation is made in accordance with the Trade Customs, copy of which is printed on the reverse side of the first page of this letter, and which are binding upon both parties." This language was not only in the body of the letter, but was repeated after the signature. The Trade Customs recited that they governed all quotations made, and contracts for manufacturing, accepted by Kingsport Press, Inc., that they conformed in every respect with those

**446**

adopted by the United Typothetae of America, Employing Bookbinders of America, and the National Book Manufacturers Association, and contained this provision: "Manufacturer's lien attaches on all goods in our possession until delivery to customer, notwithstanding the giving of credit or the accepting of notes or guarantee of payment." It is beyond question that the estimate was part of the contract, and that the Trade Customs governed its terms. This being so, we have no occasion to decide whether a manufacturer's lien, assimilated to an artisan's or mechanic's lien, attached to the property in claimant's possession by operation of law, either under principles of common law or provisions of the Tennessee statute, for clearly a lien was reserved to the claimant by express contract.

It is contended, however, by the trustee, that if a lien existed it was waived prior to adjudication. This contention is based upon the following circumstances: Early in 1930 the bankrupt found itself in financial difficulties. Tolman its president and principal stockholder, and also a creditor, secured an extension agreement, executed by substantially all of the creditors, wherein it was provided that no suit should be brought by any creditor for a period of six months, that Tolman would lend his best efforts to market and sell the bankrupt's product until all creditors were paid in full, report periodically to a creditors' committee, of which he was to be chairman and on which the claimant should be represented, and be governed by the wishes of a majority of the committee. The creditors agreed to co-operate as far as possible with Tolman in the operation of the business. Some time after the execution of the agreement, the claimant by its president wrote to Tolman, "In consummating this agreement the Kingsport Press, Inc., releases all liens on books manufactured by them and delivered either to Merchandisers, Inc., direct or to any Boston warehouses; likewise books, plates and other material which may be in their possession at Kingsport, Tennessee, believing that it is to the best interests of all creditors involved and in accord with the provisions of the creditors' agreement." By mutual consent the creditors' agreement was continued for an additional six months, but finally lapsed through the running of time and the failure of objectives, whereupon the claimant advised Tolman that it withdrew therefrom, and considered that its rights had reverted to their original status.

The referee found that there had been no waiver of lien, a finding confirmed by the District Judge. We are in agreement. The bankrupt was not a party to the creditors' agreement, there was no transfer or assignment to it of the lien, and the waiver was clearly in contemplation of and for the purpose of carrying out the creditors' agreement, and for the term thereof. When the agreement ended, it ceased to operate. It is axiomatic that there may be a waiver of lien for one purpose and not for all purposes, and in respect to specified persons and not to others. Finally, there may be no waiver unless there is clearly an intent to waive, and by the same rationalizing, no unconditional waiver where the intent is merely to grant a conditional waiver, limited in time and purpose. In so far as the conclusions of referee and District Judge are based impliedly if not expressly upon a finding of fact with respect to lack of claimant's intent to unconditionally release its lien, they are concurrent findings, controlling in the absence of clear mistake, even were we to consider such findings reviewable upon this appeal.

The priority adjudged in favor of the claimant in respect to all of the bankrupt's assets in Tennessee over claims of foreign corporate creditors, is based upon a statute (section 2552, Shannon's Code), which provides:

"*Resident creditors have priority.*— Nevertheless, the creditors who may be residents of this state shall have a priority in the distribution of assets, or subjection of the same, or any part thereof, to the payment of debts over all simple contract creditors, being residents of any other country or countries, and also over mortgage or judgment creditors, for all debts, engagements, and contracts which were made or owing by the said corporations previous to the filing and registration of such valid mortgages, or the rendition of such valid judgments."

So far as this statute gives priority in the distribution of the assets of insolvents located in Tennessee to Tennessee creditors over foreign corporations, it has been held valid and not violative of the privileges and immunities clause of article 4, section 2, of the Constitution of the United States in Blake v. McClung, 172 U.S. 239, 19 S.Ct. 165, 43 L.Ed. 432, however it invades the

privilege or immunity of natural persons who are citizens of other states, and it has been held that corporations, organized under the laws of other states, but domesticated in Tennessee, are within the scope of the statute and upon a parity with local creditors in respect to the administration of assets located within Tennessee. New River Lumber Co. v. Globe Wernicke Co., 4 Tenn.App. 522.

The argument is made, however, that the statute is of no avail to the present claimant because the contract was one in interstate commerce, made without the state between one nonresident corporation and another, and that the fortuitous circumstance that assets are found in Tennessee does not bring it into operation. But this is clearly without merit, for the assets to be administered are in Tennessee, subject to its laws, and to rights in their distribution by them declared, and are no longer, even if ever they were, the subject of interstate commerce. Finally it is urged that Blake v. McClung, supra, is no longer controlling because of the 1926 amendment to section 64b (7) of the Bankruptcy Act, 11 U.S.C.A. § 104 (b) (7), which provides:

"The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment shall be * * * (7) debts owing to any person who by the laws of the States or the United States is entitled to priority: Provided, That the term 'person' as used in this section shall include corporations, the United States and the several States and Territories of the United States."

It was thought by one of the District Courts, In re C. D. Hauger Company, 54 F.(2d) 117 (D.C.Tex.), that this amendment did away with the distinction that the Tennessee citizen had theretofore enjoyed by reason of the statute above recited; that the Bankruptcy Act made its own declaration of priority, not to be affected by local law. That view was rejected by the Circuit Court of Appeals for the Fourth Circuit, In re Boggs-Rice Co., 66 F.(2d) 855, where in a carefully reasoned opinion by Judge Parker it was held that the only office of the provision in the amendment to the Bankruptcy Act was to define "person" as used in the section, and not to exclude from priority one entitled to it under the laws of the states or of the United States. With this view we agree.

The decree below is amended in so far as it adjudges the claimant to be without lien upon manufactured goods or materials in its possession at the time of adjudication, and, as so amended, it is affirmed, the effect of such amendment and affirmance being to affirm the order and report of the referee.